Page 1 of 17

In The United States District Court
For The Western District of Virginia
Roanoke Division.

CLERK'S OFFICE U.S. DISTRICT. COURT
AT ROANOKE, VA
FILED
JUL 28 2026
LAURA A. AUSTIN, CLERK
BY: M. POFF
DEPUTY CLERK

Larry Young, Jr.,
          Plaintiff,

v.

Orange County Board of Supervisors,
et al.,
          Defendants.

Case No. 7:26-cv-00145.

Brief In Opposition Of Motion To
Dismiss.

Comes now the Plaintiff, Larry Young, Jr.,
Pro Se, and in response to the Defendant's
Motion To Dismiss for failure to State
a Claim, states as follows.

To Survive a motion to dismiss, a Complaint
must contain sufficient factual matter,
accepted as true, to state a claim to
relief that is plausible on its face. See
Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Page 2 of 17

## The Latin Cross.

The Orange County Sheriff's office, ("ocso"), uniform displays a Latin Cross with the motto "for God and for Country", over the right breast pocket.

"The Latin Cross has been described by Courts as a cross where the base stem is longer than the other three arms of the cross." Demmon v. Loudoun County Public Schools, 279 F. Supp. 2d 689 (E.d. Va. 2003).

It is undisputable that the Latin Cross is exclusively a Christian symbol, and not emblematic of any other faith.

See American Legion v. Am. Humanist Ass'n, 139 S.ct. 2067, 204 L.Ed. 2d 452 (2019) ("For nearly two millennia", the Latin Cross has been the "defining symbol." of Christianity, R. Jensen, The Cross; History, Art, and Controversy ix (2017), evoking the

Page 3 of 17

foundational claims of that faith. Christianity teaches that Jesus Christ was a "divine savior" who "illuminate [d] a path toward salvation and redemption." Lynch, 465 U.S. at 708, 104 S. Ct. 1355 (Brennan, J., dissenting). Central to the religion are the beliefs that "the son of God", Jesus Christ, "died on the cross", that "he rose from the dead", and that "his death and resurrection offer the possibility of eternal life." Brief for Amici Christian and Jewish Organizations 7. "From its earliest times", Christianity was known as "religio crucis - the religion of the cross." R. Viladesau, The Beauty of the Cross: The Passion of Christ in Theology and the Arts, From the Catacombs to the Eve of the Renai-ssance 7 (2006). Christians wear crosses, not as an ecumenical symbol, but to proclaim their adherence to Christianity. An exclusively Christian symbol, the Latin cross is not emblematic of any other faith. Buono, 559 U.S. at 747, 130 S. Ct.

Page 4 of 17

1803 (Stevens, J., dissenting); Viladesau, Supra, at 7 ("[T]he Cross and its meaning ... Set Christianity apart from other world religions.").).

"Symbolism is a primitive but effective way of Communicating ideas. The use of an emblem ... to symbolize some system, idea, institution, or personality, is a short cut from mind to mind. ... [T]he Church speaks through the Cross, the Crucifix, the altar and Shrine, and Clerical reiment." W. Va. State Bd. of Educ. v. Barnette, 319 U.S. 624, 632, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943).

## The Establishment Clause.

The Latin Cross located on every OCSO uniform Clearly represents governmental endorsement of Christianity. It may be reasonably perceived that the OCSO is providing official approval of one religious faith over others.

Page 5 of 17

It is undisputable that the OCSO's actions are a violation of the Establishment Clause.

The Establishment Clause provides simply that "Congress shall make no law respecting an establishment of religion." The Establishment Clause prevents the government from promoting any religious doctrine or organization or affiliating itself with one. County of Allegheny v. American Civil Liberties Union, 492 U.S. 573, 589, 109 S. Ct. 3086, 106 L. Ed. 2d 472 (1989). It "is a specific prohibition on forms of state intervention in religious affairs." Lee v. Weisman, 505 U.S. 577, 591, 112 S. Ct. 2649, 120 L. Ed. 2d 467 (1992). One of the few absolutes in the Establishment Clause Jurisprudence is the "prohibit[ion against] government-financed or government-sponsored indoctrination into the beliefs of a particular religious faith." Bowen v. Kendrick, 487 U.S. 589, 611, 108 S. Ct. 2562, 101 L. Ed. 2d 520 (1988).

Page 6 of 17

As Justice Blackmun observed for the United States Supreme Court in Allegheny County v. Greater Pittsburgh ACLU, 492 U.S. 573, 592, 109 S. Ct. 3086, 3100, 106 L. Ed. 2d. 472 (1989); (Whatever else the Establishment Clause may mean (and we have held it to mean no official preference even for religion over nonreligion, See e.g. Texas Monthly, Inc. v. Bullock, 489 U.S. 1, 109 S. Ct. 890, 103 L. Ed. 2d 1 (1989)), it certainly means at the very least that government may not demonstrate a preference for one particular sect or creed (including a preference for Christianity over other religions). "The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." Larson v. Valente, 456 U.S. 228, 244, 102 S. Ct. 1673 1683, 72 L. E. 2d 33 (1982).

Page 7 of 17

## The Free Exercise Clause.

The Latin Cross located on every OCSO uniform clearly illustrates that the OCSO is lending its power to one side in controversies over religious authority. It may be reasonably perceived that the armed personnel of the OCSO do not accept or endorse any religion other than Christianity, which is boldly promoted on every uniformed employee.

It is undisputable that the OCSO's actions are a violation of the Free Exercise Clause.

The Plaintiff, through armed coercion, has a substantial burden on the exercise of his own religion. Not only does the Plaintiff feel like an outsider to the OCSO's religion, the Plaintiff is fearful to exercise his own religious beliefs because they fail to align with the OCSO's religious beliefs.

Page 8 of 17

The Plaintiff has experienced a situation in which his religious beliefs did not align with the government's religious beliefs. A citizen facing an armed government who is actively promoting a religious belief that is in opposition to his own is a terrifying event to occur, in of all places, Virginia, the home of Thomas Jefferson.

247 years ago, Virginia law established religious freedom in this Commonwealth on January 16, 1786, having been drafted and proposed in 1779 by Thomas Jefferson himself. Following in the footsteps of Jefferson, the United States Supreme Court has continuously held that the government must remain neutral in the sphere of religious beliefs.

The Free Exercise Clause, like the Establishment Clause, extends beyond facial discrimination. The Clause "forbids subtle departures from neutrality," Gillette v. United States, 401 U.S. 437, 452 (1971),

Page 9 of 17

and "covert suppression of particular religious beliefs," Bowen v. Roy, supra, at 703 (opinion of Burger, C.J.). The Free Exercise Clause protects against governmental hostility which is masked as well as overt.

The Free Exercise Clause also forbids governmental entities from compelling affirmation of religious belief, Torcaso v. Watkins, 367 U.S. 488, 81 S. Ct. 1680, 6 L. Ed. 2d 982 (1961), or lending its power to one side or the other in controversies over religious authority or dogma, Presbyterian Church in U.S. v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church, 393 U.S. 440, 89 S. Ct. 601, 21 L. Ed. 2d 658 (1969).

The operation of the OCSO and the Orange County Board of Supervisors, ("OCBS").

Virginia Code Section 15.2-1613, Operation of Sheriff's office (2026) holds; "Any County ... may appropriate funds

Page 10 of 17

for the operation of the Sheriff's office.
... [C]ounties ... Shall provide at their
expense in accordance with standards
set forth in Section 15.2-1610 a
reasonable number of uniforms and items
of personal equipment required by the
Sheriff to carry out his official duties."

Through the Virginia Compensation Board, the
state provides a bulk of the funding
received by Sheriff's offices. However,
as Virginia Code Section 15.2-1613
articulates, the Counties are responsible
for providing funding to Sheriff's office
for the purchasing of uniforms, personal
equipment, and vehicles for the Sheriff
and his Deputies.

Accordingly, the OCBS has significant
authority over the OCSO's budget.
This means the OCBS can influence
the OCSO through it's control over
County appropriations. For example,
the approval or denial of the OCSO's
uniforms displaying the Latin Cross.

Page 11 of 17

The OCBS adopted funding for the OCSO in the FY2025 budget, (July 1, 2024 - June 30, 2025). Based on the OCBS FY2025 adopted budget, the local Contribution to the OCSO is listed as $4,982,771. This amount, nearly Five Million Dollars, provided by the OCBS from Orange County's local revenues, was (primarily local taxes and other local general fund revenue), to Support the OCSO operations during FY2025.

The FY2025 adopted budget for Orange County, Virginia is a publicly published Source.

Therefore, the OCBS is directly responsible for appropriating funds from local taxes generated in Orange County, to the OCSO for the purchase of uniforms, which display the Latin Cross above the right breast pocket of every OCSO blouse.

## The OCSO's Monell Liability.

For the Plaintiff to hold the OCSO liable for a Constitutional violation under 42 U.S.C. 1983, he must show that the execution of a policy or custom of the OCSO caused the violation.

See MisJuns v. City of Lynchburg, 139 F.4th 378 (4th Cir. 2025) (To hold a municipality liable for a Constitutional violation under Section 1983, a plaintiff must show that the execution of a policy or custom of the municipality caused the violation. Hall v. Marion Sch. Dist. No. 2, 31 F.3d 183, 195 (4th Cir. 1994). This is referred to as Monell liability. See Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). "A policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policy making authority;

Page 13 of 17

(3) through an omission, such as failure to properly train officers, that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law." Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) (cleaned up).).

The Plaintiff listed the OCSO as a defendant in his complaint, and he alleged that every OCSO uniform bears a Latin Cross. The OCSO is liable under Monell because: (1) placing a Latin Cross on every OCSO uniform was a decision of a person within the OCSO with final policymaking authority; and (2) the placement of a Latin Cross on every OCSO uniform is a practice that is so persistent and widespread within the OCSO as to constitute a custom or usage with the force of law.

Accordingly, the Plaintiff has successfully pled a valid claim under Monell against the OCSO for violation of the Free Exercise Clause and the Establishment Clause.

Therefore, the Plaintiff's claims against the OCSO are sufficient to survive the defendant's motion to dismiss for failure to state a claim, even if this court dismisses the claims against the OCBS.

## The OCBS's Monell Liability.

In their motion to dismiss, the OCBS argues that they are not responsible for nor oversee the sheriff.

However, the Code of Virginia has several statues that are in conflict with the defendant's position.

Chapter 4 of the Code of Virginia, County Board Form of Government; Section 15.2-403 ; Powers and Duties, States as follows.

Page 15 of 17

"The board shall be the policy-determining body of the County ... The board may inquire into the official conduct of any office or officer, whether elective or appointive, of the County..."

The OCBS, not the OCSO, has the final policy making authority over hiring additional deputies.

See Virginia Code Section 15.2-1609.1 ([T]he respective number of full-time deputies appointed by the Sheriff of a County... Shall be fixed by the Compensation Board after receiving such recommendation of the board of Supervisors of the County. ... The governing body of any county ... may employ a greater number of law-enforcement deputies than fixed by the Compensation Board, provided that the County ... Shall pay the total Compensation and all employer costs for such additional deputies.).

Page 16 of 17

Not only is the OCBS responsible for hiring additional deputies for the ocso. The OCBS is responsible for providing the ocso with their uniforms. See Virginia Code 15.2-1613 ; Operation of Sheriff's Office.

The OCBS cannot claim that they are not liable for the ocso's uniforms, when it is the OCBS that buy the ocso their uniforms.

The OCBS is liable under Monell because : (1.) buying the ocso uniforms is a decison made within the OCBS by a final policy maker ; and (2.) the placement of a Latin cross on the ocso uniform, which is purchased by the OCBS, is a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.

Accordingly, the Plaintiff has successfully pled a valid claim under Monell against the OCBS for violation of the Free Exercise Clause and the Establishment Clause.

Therefore, the Plaintiff's claims against the OCBS are sufficient to survive the defendant's motion to dismiss for failure to State a claim.

Respectfully Submitted:
Larry A. Young, Jr.
Pro Se
*Larry A. Young*
21 July 2026

## Certificate of Service.

The undersigned hereby certifies that on the 21st day of July, 2026, a true copy of the foregoing was mailed to the Clerk's office of this court.

Larry A. Young, Jr.
*Larry A. Young*
Albemarle Charlottesville Regional Jail
160 Peregory Lane
Charlottesville, Virginia 22901

Larry Young, Jr. # 106-50309
Albemarle Charlottesville Regional Jail
160 Peregory Lane
Charlottesville, VA 22901

United States
Office of The
210 Franklin R.D.
Roanoke, VA 24011

RECEIVED
JUL 28 2026
USDC Clerk's Office
Mail Room

Legal Mail



FIRST-CLASS

US POSTAGE IMI PITNEY BOWES

ZIP 22902
02 7H
0006165999

$ 002.56⁰

JUL 24 2026

District Court

Clerk

, RM 540